UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-81479-Civ-Ryskamp/Vitunac

WILLIAM JAMES JOHNSON,

    Plaintiff,

v.

CHARLES SCHWAB & COMPANY, INC.,

    Defendant.

_____/



FILED by _____ D.C.

JAN 26 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference (DE 4) from United States District Judge Kenneth L. Ryskamp for all pretrial matters. Defendant's Motion to Compel Arbitration (DE 18) is before the Court, to which Plaintiff responded (DE 19). Defendant did not file a Reply, but, as the time for doing so has passed, this matter is ripe for review.

### Background

William Johnson alleges the following facts in his Complaint. Charles Schwab employed Mr. Johnson from March 1995 to October 2000. Complaint ¶ 11. While at Charles Schwab, Mr. Johnson taught a number of classes and wrote a number of training manuals for the company. Id. at ¶¶ 12-15. Mr. Johnson left Charles Schwab on good terms and began working at 21st Century Investor. Id. at ¶¶ 18-19. In January 2007, Mr. Johnson began working for Options University in Boca Raton, Florida. Id. at ¶ 22. Apparently, Options University, in mailings and on its websites, advertised its association with Mr. Johnson, describing his experience thusly,

1

> "Bill Johnson was in charge of the . . . economics and options training program at Charles Schwab. He literally wrote Schwab's compliance approved manuals on options training and risk management."
>
> "He was Schwab's expert for the experts!"
>
> "Over the years, Bill has taught hundreds of brokers about options, including some of Schwab's senior traders . . ."

Complaint Ex. A. Charles Schwab sent a cease and desist letter to Options University demanding that references to Schwab be removed and stating that none of the above characterizations of Mr. Johnson's job were correct. Id. Mr. Johnson then sued Charles Schwab alleging defamation, duress, intentional infliction of emotional distress, and negligence.

## Motion to Stay and Compel Aribtration

Charles Schwab moves the Court to compel arbitration and stay this action. This dispute, Charles Schwab argues, is subject to arbitration because Mr. Johnson executed a Uniform Application for Securities Industry Registration, a Form U-4, when he began working for Charles Schwab that contains an arbitration agreement. The form's arbitration agreement states that Mr. Johnson agrees to "arbitrate any dispute, claim or controversy that may arise between me and my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the SRO's indicated" in the form.

Charles Schwab relies on Rule 13200(a) of the Code of Arbitration, which requires that disputes between or among members be arbitrated if the dispute arises out of the business activities of a member. Charles Schwab contends that this dispute must be arbitrated because it is between associated persons, and arises in connection with Plaintiff's former employment.

## Response in Opposition

Mr. Johnson, on the other hand, argues that his dispute is not eligible for arbitration because Rule 12206 of the Code of Arbitration requires that claims be brought within six years, and since he left Schwab on October 2000, any claim based on his employment is outside the time limit for arbitration.

Mr. Johnson notes that Charles Schwab has failed to produce an executed Form U-4. The SEC requires records be kept until at least three years after the "associated person" has terminated his employment and any other connection with the member, broker or dealer. Thus, Mr. Johnson argues, he is no longer an associated person, as indicated by Charles Schwab's own actions.

Lastly, Mr. Johnson argues that his dispute does not arise between or among members, members and associated persons or associated persons. "Neither 21st Century Investor nor Options University has ever been, or associated with, a Member Firm." Response p. 4. In support of his point, Mr. Johnson cites <u>Valentine Capital Mgmt., Inc., v. Agahi</u>, which, in Mr. Johnson's estimation, found "FINRA was inapplicable because the parties' dispute <u>did not arise out of their business activities as FINRA members</u>." The emphasis is Mr. Johnson's.

## Discussion

### I. Valid Written Agreement to Arbitrate

Allegedly, Mr. Johnson is subject to an arbitration agreement. If he is, and his dispute falls within the agreement's sweep, the Federal Arbitration Act (FAA) directs this Court to compel arbitration and stay this action. 9 U.S.C. § 3. The Act, however, requires a written agreement, <u>id.</u>, and Charles Schwab failed to attach a signed or executed U-4 form to its motion. When confronted with this conflict, Charles Schwab pointed to the SEC regulations that state Charles Schwab is not

3

required to keep a copy of the contract and argued that, under a clause in the contract Mr. Johnson, could not contest the authenticity of electronically filed documents. Both of these arguments, of course, miss the point. Nonetheless, the Court is satisfied that the Form U-4 at issue is governed by the FAA for two reasons: (1) It is undisputed that Mr. Johnson had executed the U-4 form, because the NASD and the NYSE require executed U-4 forms before one can register with them; and (2) the Eleventh Circuit holds that a written, but unsigned, arbitration clause, qualifies as a written agreement under the FAA such that this Court can compel arbitration. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1369-70 (11th Cir. 2005).

## II. Dispute Subject to Arbitration

Mr. Johnson agreed to be bound by the arbitration rules of the NASD and the NYSE as they then existed or were later modified. Form U-4, (DE 18 Ex. A). In 2007, the SEC approved the consolidation of these entities into the Financial Industry Regulatory Authority (FINRA). Accordingly, the Court looks to FINRA's provisions to determine whether Mr. Johnson must arbitrate his dispute. The relevant FINRA rule provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated in the Code if the dispute arises out of the business activities of a member or an associated person and is between or among members; members and associated persons; or associated persons." Rule 13200(a).

### 1. Associated Person

Initially, the Court finds that the dispute is between a member and an associated person. Charles Schwab is a member, Rule 13100(o), and Mr. Johnson is an associated person. Mr. Johnson argues that he is no longer an associated person because he is no longer a registered broker. While this argument is sensible, it fails in the face of the Code's clear language: "For purposes of the Code,

a person formerly associated with a member is a person associated with a member." Rule 13100(r). In short, once an associated person, always an associated person.

2. Arises out of Business Activities

But, has this dispute arisen out of the business activities of the parties as members of FINRA? The Tenth Circuit holds that "arising out of" should be broadly construed to mean "originating from," "growing out of," or "flowing from." Williams v. Imhoff, 203 F.3d 758, 765 (10th 2000). And, indeed, numerous courts have held that Form U-4 arbitration provisions encompass title VII employment discrimination suits. See e.g., Desiderio v. Nat'l Ass'n of Securities Dealers, Inc., 191 F.3d 198, 206 (2nd Cir. 1999). But, the Tenth Circuit's rather organic definition must have some limits, because, while courts are to favor arbitration, AT&T Technologies Inc., v. Commc'n Workers of Am., 475 U.S. 643, 650 (1986), the underlying authority to compel arbitration relies on the parties' agreement to arbitrate. Id. at 648. Thus, the Court's construction of "arising out of" cannot out-run the parties' intention, even if "those intentions are [to be] generously construed as to issues of arbitrability." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985).

Valentine Capital Asset Mgmt. v. Agahi, illustrates this point rather well. In it, the California Appellate Court holds that disputes must arise out of the business activities of an "individual as an associated person," to fall within the scope of the arbitration clause. 174 Cal. App. 4th 606, 616 (Cal. Ct. App. 2009). As that court notes, surely FINRA members did not contemplate forced arbitration for disputes that arise out of side businesses. Otherwise, "registered representatives, engaged in the side business of collecting and selling art, might become embroiled in a dispute over the sale of a painting that one claims to be a fake," that must proceed to arbitration. Id. Thus, the

5

Court must determine the nature of the dispute to see if it could reasonably be said to have been within that class of disputes the parties contemplated as arbitrable.

Mr. Johnson describes his dispute as follows: "[t]his issue is that Defendant mailed the letter and not that the letter described dealings as a past employee." By doing this, Mr. Johnson seeks to divorce his claims from his past employment. But, the two cannot be separated. Mr. Johnson must describe the letter's contents to allege that sending it was wrongful, and this will require a description of the duties Mr. Johnson undertook while employed with Charles Schwab. Take, for example, Mr. Johnson's defamation count. The elements for an action for defamation are, (1) publication, (2) falsity, (3) negligence, (4) actual damages and (5) a defamatory statement. Jews for Jesus, Inc., v. Rapp, 997 So.2d 1098, 1106 (Fla. 2008). Both falsity and defamation require that the pleadings allege the letter's contents. In sum, the resolution of this dispute will require a determination of the duties Mr. Johnson undertook while employed with Charles Schwab.

This Court is not the first to confront the question of whether allegedly defamatory descriptions about employment fall within FINRA arbitration agreements. In Millas v. Morgan Stanley, a Southern District of Illinois Court confronted a complaint that alleged breach of contract, tortious interference with a business relationship and defamation. 2008 WL 5095917 (S.D. Ill. Dec. 1, 2008). Morgan Stanley had allegedly made a number of statements plaintiff thought inappropriate when it filed the Form U-5. The Form U-5 is filed when a registered broker ends his employment with a firm. The Illinois court found that the dispute as to whether the statements were defamatory fell under the broad language of the arbitration provisions at issue. The court wrote,

> Millas's sole argument on this point is that intentionally making false statements on the Form U-5 cannot possibly 'relate to' Morgan Stanley's business activities. But it most certainly does, when filling out the Form U-5 is a direct and necessary

6

consequence of terminating Millas's employment with the firm. Id. at *6. The Millas court found that a suit based on statements about the cause of the termination from employment fell under the arbitration language.

Unlike Morgan Stanley in Millas, Charles Schwab's past relationship with Mr. Johnson did not compel it to send the cease and desist letter. But, that relationship, the only relationship between Charles Schwab and Mr. Johnson, is governed by FINRA. And when Charles Schwab decided to send a cease and desist order, signed by its corporate counsel, Charles Schwab made a business decision arising out of that relationship. This is what FINRA's arbitration proceedings contemplate. Moreover, FINRA's arbitration proceedings are ideally situated to determine the issue underlying Mr. Johnson's suit: the appropriate characterization of his employment and responsibilities with Charles Schwab. Accordingly, the Court respectfully

RECOMMENDS that Charles Schwab's Motion to Compel Arbitration (DE 18) be GRANTED and this action be STAYED pending the resolution of arbitration.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth L. Ryskamp, within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings contained herein. See United States v. Warren, 687 F.2d 347, 348 (11th Cir.1982), cert. denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District of Florida, this 26 day of January, 2010.

ANN E. VITUNAC
United States Magistrate Judge